UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
RAYVON RUTHERFORD,                   :
               Plaintiff,        :
v.                                   :
                                   :
CORRECT CARE SOLUTIONS, LLC; NEW   :
YORK CORRECT CARE SOLUTIONS      :
MEDICAL SERVICES, P.C.; DOCTOR RAUL  :
ULLOA; WESTCHESTER COUNTY;       :
ASSISTANT WARDEN FRANCIS        :
DELGROSSO; ASSISTANT WARDEN      :
LAFONDA SPAULDING; CAPTAIN       :
CHRISTOPHER ROBERTS; SGT. HECTOR  :
LOPEZ #137, SGT. RANDAZZO #214;    :
CAPTAIN THOMLIN; C.O. HERRINGTON  :
#1321; and ALEXIS GENDELL, Administrator  :
for CCS,                              :
               Defendants.      :
-------------------------------------------------------------x

**OPINION AND ORDER**

18 CV 12049 (VB)

Briccetti, J.:

      Plaintiff Rayvon Rutherford, proceeding pro se and in forma pauperis, brings this action

pursuant to 42 U.S.C. § 1983 against defendants Correct Care Solutions, LLC, and New York

Correct Care Solutions Medical Services, P.C. (collectively, "CCS"); CCS Medical Supervisor

Dr. Raul Ulloa and CCS Administrator Dr. Alexis Gendell (together with CCS, the "medical

defendants"); Westchester County (the "County"); and Assistant Warden ("A.W.") Francis

Delgrosso; A.W. Lafonda Spaulding; Captain ("Capt.") Christopher Roberts; Sergeant ("Sgt.")

Hector Lopez; Sgt. Randazzo; Capt. Chris Thomalen (sued herein as Capt. Thomlin); and

Correction Officer ("C.O.") Harrington (sued herein as C.O. Herrington) (collectively and

together with the County, the "County Defendants").

      Now pending are: (i) the medical defendants' motion to dismiss plaintiff's third amended

complaint ("TAC") (Doc. #45); (ii) the County's motion to dismiss, to the extent plaintiff asserts

any medical-related claims against the County (Doc. # 57); and (iii) the County Defendants' motion to dismiss all other claims (Doc. #61).

For the following reasons, the medical defendants' motion (Doc. #45) is GRANTED, the County's motion (Doc. #57) is GRANTED, and the County Defendants' motion (Doc. #61) is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the TAC and draws all reasonable inferences in plaintiff's favor, as summarized below.[1]

At all times relevant to the TAC, plaintiff was confined to the Westchester County Jail ("WCJ").

I.     Plaintiff's Medical Condition

At some time prior to his confinement at WCJ, plaintiff had surgery to correct severed flexor tendons in his right hand. He alleges the surgery was completed in part, and that he required a second operation to fully correct the severed tendons.

In January 2018, plaintiff complained to CCS medical staff that he was experiencing pain in his right hand, which prevented him from performing regular daily activities. Specifically, plaintiff alleges the pain prevented him from gripping things properly, washing, brushing his teeth, writing, eating, exercising, and dressing. CCS staff examined him numerous times and provided medication to manage the pain.

---

[1]     By Order dated May 7, 2019, the Court construed plaintiff's second amended complaint (Doc. #25) and supplemental filing (Doc. #29) as the operative third amended complaint in this action. (Doc. #30).

Around June 2018, plaintiff complained to CCS staff that he was experiencing pain in both wrists and hands. Plaintiff also complained the mobility in his right hand had become worse. CCS staff performed X-rays to assess plaintiff's medical needs, continued to provide pain medication, and also prescribed physical therapy treatment.

According to plaintiff, he filed more than twenty sick call requests. He further alleges CCS staff, including his physical therapist, suggested that he be seen by an orthopedic hand specialist, and Dr. Ulloa declined to authorize such referral because CCS doesn't "take money out of the budget for preexisting conditions, and . . . plaintiff should wait until he was transferred or went home so his next facility or insurance can pay for his surgical procedure." (Doc. #25 at 10).[2]

Dissatisfied with his ongoing medical treatment, plaintiff submitted multiple medical complaints to CCS Administrator Dr. Gendell between September and December 2018. Plaintiff alleges Dr. Gendell reviewed plaintiff's complaints and concluded plaintiff was receiving adequate medical attention, even though Dr. Gendell never personally examined plaintiff.

II.    Plaintiff's Grievance Submissions

Plaintiff filed multiple grievances pertaining to the quality of medical services he was receiving at WCJ. These grievances were denied by A.W. Spaulding, A.W. Delgrosso, and Sgt. Lopez. According to plaintiff, defendants conspired to ignore plaintiff's grievances to "creat[e] the [illusion] that plaintiff did not have a serious medical condition." (Doc. #25 at 12).

In addition, plaintiff filed several grievances respecting the County Defendants' conduct. Specifically, plaintiff alleges Sgt. Lopez physically threatened and intimidated plaintiff in efforts to prevent plaintiff from filing grievances. According to plaintiff, Sgt. Lopez threatened to have

_____

[2]    Citations to "Doc. #__ at __" refer to document and page numbers automatically assigned by the Court's Electronic Case Filing system.

plaintiff confined to keep-lock disciplinary housing if plaintiff continued to complain about Sgt. Lopez's conduct. Plaintiff alleges Sgt. Lopez repeatedly retaliated against and threatened him because plaintiff named Sgt. Lopez in a separate lawsuit.

Plaintiff alleges his numerous grievances respecting Sgt. Lopez's conduct were denied by A.W. Spaulding, Capt. Roberts, and non-party Sgt. Middleton. Plaintiff alleges A.W. Spaulding and Capt. Roberts denied the grievances without investigating them. Moreover, plaintiff alleges Sgt. Lopez violated WCJ grievance procedure on January 8, 2019, when Sgt. Lopez delivered to plaintiff Capt. Roberts's denial of plaintiff's grievance respecting Sgt. Lopez. According to plaintiff, it is a violation of WCJ grievance procedure for a complained-of WCJ employee to deliver answers to grievances regarding him or herself.

Plaintiff submitted a grievance to Sgt. Randazzo respecting Sgt. Lopez's alleged grievance procedure violation. According to plaintiff, Sgt. Randazzo gave plaintiff's grievance to Sgt. Middleton for review, and, along with Capt. Roberts, submitted a false witness statement regarding plaintiff's January 8, 2019, interaction with Sgt. Lopez. Plaintiff further alleges Sgt. Randazzo failed to investigate the issue. Sgt. Middleton denied the grievance.

III.    Keep-Lock Housing

On November 8, 2018, C.O. Harrington allegedly filed two false reports against plaintiff. The first report states plaintiff refused C.O. Harrington's order to report to his cell for block clean-up. According to the report, plaintiff told C.O. Harrington: "We don't lock-in, stop starting shit, I will smack the shit out of you." (Doc. #29 at 32). In the second report, C.O. Harrington states plaintiff interfered with WCJ staff's performance of duties, and failed to attend or participate in an assigned education, vocation, or rehabilitation program. On November 9,

2018, Sgt. Randazzo reviewed the reports and confined plaintiff to keep-lock housing for eight days.

Plaintiff further alleges he was again placed in disciplinary housing, from February 1 through February 6, 2019. He also alleges that on March 4, 2019, he was moved to new quarters in the "old jail" and placed in an environment with inmates with high security classifications. (Doc. #25 at 20). According to plaintiff, Capt. Thomalen ordered him placed in disciplinary housing and transferred to the old jail because he had filed grievances against Sgt. Lopez and a non-party, Sgt. Brown. According to plaintiff, Capt. Thomalen stated: "How many grievances did you write, and [you're] suing my friend Sgt. Lopez, [you're] going to a place where people like to write grievances and file lawsuits." (Doc. #25 at 21).

IV.    Damage to Mail and Lost Packages

Plaintiff alleges that, in December 2018, "to further inflict harm against him," unnamed WCJ mail room staff damaged two greeting cards sent to plaintiff by his family. (Doc. #25 at 21). Plaintiff submitted grievances respecting the damaged cards. A.W. Spaulding and non-party A.W. Vollmer answered plaintiff's grievances, noting the greeting cards did not comply with WCJ inmate mail restrictions as they contained glued pages, and mail room staff should not have accepted them. However, the staff separated the glued portions of the cards to check for contraband and, after doing so, gave the cards to plaintiff.

Plaintiff further alleges that in March 2019, to retaliate against plaintiff for filing grievances, WCJ staff refused to provide plaintiff two mailed packages containing books. After plaintiff grieved the issue, non-party Sgt. Allen Weston informed plaintiff that inmates are allowed up to five books, and plaintiff needed to dispose of some old books to receive the two new books that were mailed to him. Unsatisfied, plaintiff filed another grievance. This time,

non-party Sgt. Sorrento answered the grievance and informed plaintiff the packages had been misplaced. Sgt. Sorrento instructed plaintiff to submit a lost/stolen property form for the cost of the books.

V.    Plaintiff's Other Pending Lawsuit

On May 31, 2018—seven months before plaintiff commenced the instant action—plaintiff filed a separate lawsuit in this district, Rutherford v. Westchester County, 18 Civ. 4872 (KMK) ("Rutherford I"). In Rutherford I, plaintiff asserted claims respecting the quality and handling of food at WCJ. He also asserted claims against Sgt. Lopez for alleged non-compliance with WCJ grievance procedures, retaliation against plaintiff for filing grievances, and attempts to prevent plaintiff from filing grievances. Plaintiff further alleged Sgt. Lopez threatened to file disciplinary reports against plaintiff and have him relocated to disciplinary housing if plaintiff kept filing grievances against him.

In an Opinion & Order dated January 28, 2020, Judge Karas granted the defendants' motion to dismiss the operative second amended complaint in Rutherford I and dismissed plaintiff's claims without prejudice. Judge Karas also granted plaintiff leave to replead his claims and file a third amended complaint.

**DISCUSSION**

I.    Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[3] First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled

---

[3]    Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

II.     Duplicative Claims

The County Defendants argue plaintiff's claims against Sgt. Lopez, Capt. Roberts, Sgt. Randazzo, and C.O. Harrington are duplicative of those asserted by plaintiff in Rutherford I.

The Court agrees as to Sgt. Lopez, but not as to Capt. Roberts, Sgt. Randazzo, and C.O. Harrington.

A plaintiff has "no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." Curtis v. Citibank, N.A., 226 F.3d 133, 139 (2d Cir. 2000). "When confronted with two actions raising similar claims, and a request that the later action be dismissed, . . . a court must first resolve whether the actions are in fact duplicative." Naula v. Rite Aid of N.Y., 2010 WL 2399364, at *2 (S.D.N.Y. Mar. 23, 2010).[4] "The complex problems that can arise from multiple federal filings do not lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion." Curtis v. Citibank, N.A., 226 F.3d at 138.

In Rutherford I, plaintiff alleged Sgt. Lopez and another officer, Sgt. Brown, retaliated against plaintiff for filing grievances and prevented plaintiff from filing additional grievances. There, plaintiff also alleged Sgt. Lopez threatened to file disciplinary reports and have plaintiff relocated to disciplinary housing. These are the same allegations asserted and claims raised against Sgt. Lopez in the instant action. Thus, plaintiff's claims against Sgt. Lopez in this action are duplicative of those asserted in Rutherford I.

However, Capt. Roberts, Sgt. Randazzo, and C.O. Harrington are not named as defendants in Rutherford I, and the operative complaint in that case does not contain claims against them. Rather, in Rutherford I, plaintiff briefly mentioned in a November 28, 2018, letter

_____

[4]     Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

8

to Judge Karas, general allegations concerning retaliation and his confinement in keep-lock housing. Judge Karas ordered the Rutherford I defendants to respond to plaintiff's letter. Thereafter, plaintiff submitted an affidavit, dated January 24, 2019, containing the same general allegations, and again Judge Karas instructed the Rutherford I defendants to respond.

Judge Karas did not construe plaintiff's November 28 letter or January 24 affidavit as amending his operative complaint to assert claims against Capt. Roberts, Sgt. Randazzo, or C.O. Harrington. Indeed, in his January 28, 2020, Opinion and Order, Judge Karas declined to consider the allegations in those documents because "they are not discussed in [plaintiff's second amended complaint]." Rutherford v. Westchester County, 2020 WL 433841, at *3 n.3 (S.D.N.Y. Jan. 28, 2020). Thus, plaintiff's instant claims against Capt. Roberts, Sgt. Randazzo, and C.O. Harrington are not duplicative of claims asserted in Rutherford I.

III.    Deliberate Indifference to Serious Medical Needs

The medical defendants argue plaintiff fails to state a claim for deliberate indifference to his medical needs.

As an initial matter, it is unclear from the amended complaint whether plaintiff was a pretrial detainee or a convicted prisoner during times relevant to plaintiff's allegations, and therefore whether to analyze plaintiff's deliberate indifference claim under the Eighth or Fourteenth Amendment. See Darnell v. Pinero, 849 F.3d 17, 29 (2d Cir. 2017). Indeed, plaintiff indicated in his original complaint that he was a convicted and sentenced prisoner (Doc. #2 at 2), but indicates in his third amended complaint that he was a pretrial detainee (Doc. #25 at 2). The medical defendants believe plaintiff was sentenced on March 25, 2018, and thus became a convicted prisoner prior to the incidents of which he complains. (Doc. #53). The County Defendants are mum on the matter.

In light of these inconsistencies, the Court assesses plaintiff's deliberate indifference claim under the more lenient standards of the Fourteenth Amendment, and concludes, even under this lesser standard, that plaintiff has failed to state a deliberate indifference claim.

A.     Standard of Review

"A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." Darnell v. Pineiro, 849 F.3d at 29. To state such a claim, plaintiff's allegations must satisfy two prongs: an objective prong and a mens rea prong. Namely, plaintiff must plausibly allege "that the challenged conditions were sufficiently serious," and defendants "acted with at least deliberate indifference to the challenged conditions." Id.

To plead the objective prong, a pretrial detainee must plausibly allege the challenged conditions, "either alone or in combination, pose[d] an unreasonable risk of serious damage to his health." Darnell v. Pineiro, 849 F.3d at 30. "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'" Id. at 29.

In the context of medical care, two inquiries determine whether a deprivation is objectively serious. "The first inquiry is whether the prisoner was actually deprived of adequate medical care." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006). Because prison officials' "duty is only to provide reasonable care," prison officials are liable only if they fail "'to take reasonable measures' in response to a medical condition." Id. at 279–80 (quoting Farmer v. Brennan, 511 U.S. 825, 827 (1994)).

The second inquiry is "whether the inadequacy in medical care is sufficiently serious." Salahuddin v. Goord, 467 F.3d at 280. This question "requires the court to examine how the

offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Id. (citing Helling v. McKinney, 509 U.S. 25, 32–33 (1993)). If the allegedly offending conduct "is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." Id. Relevant factors in determining "the seriousness of the medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" Id. (quoting Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)).

If the offending conduct is the medical treatment itself, however, "the seriousness inquiry is narrower." Salahuddin v. Goord, 437 F.3d at 280. When "the prisoner is receiving appropriate on-going treatment for his condition [and] brings a . . . denial of medical care claim based on a temporary delay or interruption in treatment," courts look to "the severity of the temporary deprivation alleged by the prisoner," not "the severity of the prisoner's underlying medical condition." Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003). To qualify as a severe temporary deprivation, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

To plead the mens rea prong, a pretrial detainee must plausibly allege "that the defendant-official acted intentionally . . . , or recklessly failed to act with reasonable care to mitigate the risk that the condition posed . . . even though the defendant-official knew, or should have known," of the risk. Darnell v. Pineiro, 849 F.3d at 35. The Fourteenth Amendment's mens rea prong "is defined objectively" and "can be violated when an official does not have

subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm." Id.

"[D]istinguishing between negligent and reckless medical care is a difficult task, especially at the motion-to-dismiss stage where courts lack the benefit of expert opinion." Zhang v. City of New York, 2018 WL 3187343, at *8 (S.D.N.Y. June 28, 2018) (quoting Richardson v. Corr. Med. Care, Inc., 2018 WL 1580316, at *6 (N.D.N.Y. Mar. 28, 2018)). Courts often look to the "degree of risk associated with the negligent treatment" and have found the mens rea prong satisfied when a plaintiff did not receive treatment for a documented condition or complaint. See id.

"It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to" a constitutional violation. Chance v. Armstrong, 143 F.3d at 703. "Thus, disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

B.     Application

First, plaintiff fails to allege any facts suggesting Dr. Ulloa or Dr. Gendell deprived plaintiff of adequate medical care. Plaintiff's allegations that Dr. Ulloa ignored CCS staff suggestions that plaintiff be referred to an orthopedic specialist are entirely conclusory. Moreover, despite Dr. Ulloa's alleged remarks to plaintiff that CCS does not utilize its resources to treat preexisting conditions, according to the TAC, CCS provided continuous treatment to plaintiff for his hand and wrist pain.

As for Dr. Gendell, according to the TAC, upon receipt of plaintiff's medical complaints, he reviewed plaintiff's treatment history and concluded plaintiff was receiving adequate care. Although Dr. Gendell did not physically examine plaintiff before making this determination, this fact hardly suggests plaintiff was deprived of adequate treatment by Dr. Ulloa, Dr. Gendell, or other CCS staff.

And even assuming the truth of plaintiff's conclusory assertions, they amount only to mere disagreement over the proper treatment of his condition. Indeed, plaintiff's allegations demonstrate his hand and wrist pain was continuously treated with non-surgical procedures, including medication management and physical therapy. CCS staff took X-rays on two occasions to assess plaintiff's complaints and determine an adequate course of treatment. And on numerous occasions, CCS staff assessed plaintiff's hands for numbness, swelling, and range of motion. Indeed, during at least one medical examination, plaintiff reported no pain symptoms.

Accordingly, plaintiff's allegations do not satisfy the objective component of a deliberate indifference to serious medical needs claim.

Second, plaintiff's allegations respecting Drs. Ulloa and Gendell are insufficient to satisfy the mens rea component. Specifically, plaintiff's allegations fail to suggest Drs. Ulloa and Gendell consciously or recklessly disregarded a substantial risk of serious harm to plaintiff or failed to act with reasonable care to mitigate a risk of serious harm. In other words, plaintiff's allegations are conclusory and devoid of any facts suggesting Drs. Ulloa and Gendell failed to take sufficient action despite inferring or recklessly disregarding a substantial risk of serious harm. To the contrary, according to the TAC, plaintiff received continuous treatment for his alleged pain and condition. His complaints and condition were assessed numerous times. In

13

short, plaintiff's own allegations suggest defendants attempted to treat his condition with reasonable care.

Accordingly, plaintiff's deliberate indifference to serious medical needs claim must be dismissed.

IV.    Retaliation Claims

The County Defendants argue plaintiff fails to state a First Amendment retaliation claim.

The Court agrees with the County Defendants except as to plaintiff's claim against Capt. Thomalen.

To adequately plead a First Amendment retaliation claim, a plaintiff must plausibly allege (i) he engaged in constitutionally protected speech or conduct; (ii) a defendant took adverse action against him; and (iii) the protected speech and adverse action are causally connected.  Dolan v. Connolly, 794 F.3d 290, 294 (2d Cir. 2015).  "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation."  Dawes v. Walker, 239 F.3d 489, 493 (2d Cir. 2001), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002).

Courts "approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act."  Dolan v. Connolly, 794 F.3d at 295.  Accordingly, an inmate pursuing a retaliation claim must not rest on "wholly conclusory" allegations, but rather must allege "specific and detailed" supporting facts.  Id.

"It is well-established that 'retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances' and is therefore actionable under Section 1983." Edwards v. Horn, 2012 WL 760172, at *14 (S.D.N.Y. Mar. 8, 2012) (quoting Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996)) (adopting report and recommendation).

Liberally construed, plaintiff's TAC states a First Amendment retaliation claim against Capt. Thomalen. According to plaintiff, Capt. Thomalen placed plaintiff in keep-lock housing because plaintiff filed grievances against Sgt. Lopez. Plaintiff alleges Capt. Thomalen remarked: "How many grievances did you write, and [you're] suing my friend Sgt. Lopez, [you're] going to a place where people like to write grievances and file lawsuits." (Doc. #25 at 21).

Taken as true, these allegations suggest Capt. Thomalen took adverse action against plaintiff on account of protected speech. In addition, the County Defendants' submissions do not explain why plaintiff was placed in keep-lock housing for six days, beginning February 1, 2019.

To the extent the County Defendants contend plaintiff's claim against Capt. Thomalen should be dismissed on qualified immunity grounds, the Court is not persuaded. First, retaliation against a inmate for pursuing a grievance clearly is actionable under Section 1983. See Edwards v. Horn, 2012 WL 760172, at *14. Second, taking plaintiff's allegations as true, it is not objectively reasonable for an officer to confine a inmate to keep-lock housing to punish or deter grievance filings or lawsuits. Accordingly, plaintiff's First Amendment retaliation claim against Capt. Thomalen shall proceed.

However, plaintiff does not allege facts suggesting any other County Defendant took adverse action against him on account of his grievance filings or his filing of Rutherford I.

First, documents attached to the TAC indicate C.O. Harrington issued two disciplinary reports because plaintiff failed to follow his orders. Further, plaintiff's allegations regarding

C.O. Harrington's conduct are entirely conclusory and do not otherwise support an inference of retaliation.

Second, plaintiff fails to allege Sgt. Randazzo's order to confine plaintiff to keep-lock housing was retaliatory. Simply, the TAC does not sufficiently allege Sgt. Randazzo did so in response to plaintiff having filed grievances or a prior lawsuit against any of the County Defendants. To the contrary, documents provided by plaintiff suggest Sgt. Randazzo ordered plaintiff to keep-lock housing because plaintiff failed to obey C.O. Harrington's orders.

Third, the fact that A.W. Spaulding, A.W. Delgrosso, and Sgt. Lopez each denied plaintiff's grievances contesting his medical care is insufficient to suggest retaliatory conduct. Moreover, as noted above, plaintiff's own allegations and submitted documents reflect plaintiff received continuous care for his medical condition.

Fourth, plaintiff does not allege facts sufficient to state a retaliation claim against Capt. Roberts. Plaintiff's allegation that Capt. Roberts filed a false report regarding an interaction between plaintiff and Sgt. Lopez is conclusory, and plaintiff fails to plead any facts suggesting Capt. Roberts's actions were retaliatory.

And fifth, plaintiff's allegations of retaliation respecting damage to or loss of his mail are entirely conclusory and must be dismissed.

Accordingly, plaintiff's First Amendment retaliation claim against Capt. Thomalen will proceed, but his retaliation claim against all other defendants must be dismissed.

V.      Due Process Claim

Plaintiff fails to state a due process claim regarding his keep-lock confinement or transfer to quarters in the old jail.

To establish a violation of due process rights, a plaintiff must show "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of

insufficient process." Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001). "A prisoner's liberty

interest is implicated by prison discipline, such as [keep-lock] confinement, only if the discipline

imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents

of prison life." Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004). The same standard applies

for pretrial detainees. See Latona v. Chautauqua Cty. Jail, 2004 WL 2457797, at *5 (W.D.N.Y.

Nov. 2, 2004). Although there is no bright-line rule for establishing when keep-lock

confinement rises to the level of a constitutional violation, courts consider both the duration and

conditions of confinement. See Palmer v. Richards, 364 F.3d at 64.

In assessing the duration prong of the analysis, "restrictive confinements of less than 101

days do not generally raise a liberty interest warranting due process protection, and thus require

proof of conditions more onerous than usual." Davis v. Barrett, 576 F.3d 129, 133 (2d Cir.

2009).

Here, plaintiff alleges he was placed in keep-lock housing on two occasions—one time

for eight days, and a second time for six days. He further states he was moved to new quarters,

"in a hostile environment with inmates with a high security classification," and as a result his

"safety was at risk." (Doc. #25 at 20).

First, plaintiff fails to allege he was placed in keep-lock housing for an atypical amount

of time. Second, he fails to allege facts sufficient to suggest the conditions of his temporary

keep-lock confinement were more onerous or severe than usual. C.f. Zappulla v. Fischer, 2013

WL 1387033, at *7–8 (S.D.N.Y. Apr. 5, 2013) (finding plaintiff's allegations that he was

confined to keep-lock housing for thirty-one days, with atypically harsh conditions, insufficient

to state a due process claim). Third, because plaintiff does not have a protected liberty interest in

his housing assignment, Cooper v. City of New York, 2014 WL 5315074, at *4 (S.D.N.Y. Oct.

17, 2014), he fails to allege facts suggesting an actionable due process claim with respect to his transfer to the old jail.

For these reasons, plaintiff's due process claim must be dismissed.

VI.   Grievance Procedure Claim

The County Defendants argue plaintiff's claims respecting violations of WCJ grievance procedure should be dismissed because the Constitution does not guarantee access to an inmate grievance system.

The Court agrees.

"[I]nmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983." Cancel v. Goord, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001). "Indeed, any claim that plaintiff[] [was] deprived of [his] right to petition the government for redress is belied by the fact of [his] bringing this lawsuit." Alvarado v. Westchester County, 22 F. Supp. 3d 208, 214 (S.D.N.Y. 2014).

Accordingly, to the extent plaintiff alleges the County Defendants violated WCJ grievance procedure in derogation of plaintiff's constitutional rights, such claim is dismissed.

VII.   Conspiracy Claim

Plaintiff fails to allege a conspiracy claim against any defendant.

To survive a motion to dismiss a Section 1983 conspiracy claim, a plaintiff must allege (i) "an agreement between two or more state actors or between a state actor and a private entity"; (ii) "to act in concert to inflict an unconstitutional injury"; and (iii) "an overt act done in furtherance of that goal[,] causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). "[A]lthough "[a] plaintiff is not required to list the place and date of defendants['] meetings and the summary of their conversations when he pleads conspiracy, . . . the pleadings

must present facts tending to show agreement and concerted action."  Concepcion v. City of New York, 2008 WL 2020363, at *3 (S.D.N.Y. May 7, 2008).  "[C]onclusory allegations of a § 1983 conspiracy are insufficient."  Pangburn v. Culbertson, 200 F.3d at 72.

Liberally construed, plaintiff's TAC does not contain any plausible allegations that any defendant conspired to violate plaintiff's constitutional rights.  Thus, the claim must be dismissed.

## VIII.   Monell Claims

The County and CCS argue plaintiff fails to state claims against them pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978).

The Court agrees.

Under Monell, a municipality is liable under Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury."  Monell v. Dep't of Soc. Servs., 436 U.S. at 694.  Thus, to assert a Section 1983 claim against the County, plaintiff must allege the existence of an official policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right.  See Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012).

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:  (i) "a formal policy officially endorsed by the municipality"; (ii) "actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question"; (iii) "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware"; or (iv) "a failure by policymakers to provide adequate training or supervision

to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." Brandon v. City of New York, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010).

"While Monell claims are not subject to a 'heightened' pleading standard beyond that defined in Rule 8(a)(2), . . . such claims nevertheless must meet the plausibility requirements of [Bell Atlantic Corp. v. Twombly, 550 U.S. at 572], and [Ashcroft v. Iqbal, 556 U.S. at 678]." Guzman v. United States, 2013 WL 5018553, at *4 (S.D.N.Y. Sept. 13, 2013) (citing Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)). "In other words, boilerplate allegations will not suffice." Id. at *3. Thus, allegations that a defendant "acted pursuant to a policy, without any facts suggesting the policy's existence, are plainly insufficient." Missel v. County of Monroe, 351 F. App'x 543, 545–46 (2d Cir. 2009) (summary order). Moreover, to rely on lawsuits in alleging a municipal policy or custom, a plaintiff must provide factual details regarding same. See Rivera v. Westchester County, 2019 WL 3958425, at *5 (S.D.N.Y. Aug. 22, 2019).

Here, plaintiff has not adequately pleaded an underlying deliberate indifference to serious medical needs claim, a due process claim, or a constitutional violation regarding his grievance submissions. Accordingly, his Monell claims against CCS and the County are dismissed inasmuch as such claims seek to hold CCS and the County liable for Fourteenth Amendment deliberate indifference or due process violations, or violations regarding inmate grievance procedure. See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) (district court "was entirely correct in declining to address a Monell claim after finding no underlying constitutional violation).

In addition, plaintiff's allegations fail to suggest an unconstitutional policy or custom of retaliation that resulted in his keep-lock confinement or transfer to new detention quarters. Plaintiff lists six cases in his TAC that he alleges suggest "this is one of many instances of unconstitutional conduct by . . . security staff" at WCJ. (Doc. #25 at 12). Yet plaintiff does not provide any factual details about those lawsuits, nor does he explain how those lawsuits amount to a municipal policy or custom. Indeed, there is nothing in the TAC to suggest that those lawsuits have anything to do with the allegations in plaintiff's TAC. Accordingly, plaintiff fails to state a <u>Monell</u> claim.

IX.    <u>State Law Claims</u>

    A.    <u>Notice of Claim</u>

The County Defendants argue plaintiff has failed to file a notice of claim against the County Defendants, and for this reason any state-law claims that can be construed from his TAC should be dismissed.

The Court disagrees.

"[I]n a federal court, state notice-of-claim statutes apply to <u>state</u>-law claims." <u>Hardy v. N.Y.C. Health & Hosps. Corp.</u>, 164 F.3d 789, 793 (2d Cir. 1999). "In New York, filing a [n]otice of [c]laim with a municipality is a condition precedent to commencing a tort claim against any employee of that municipality." <u>Chamberlain v. City of White Plains</u>, 986 F. Supp. 2d 363, 396 (S.D.N.Y. 2013). "Failure to comply with [notice of claim] requirements ordinarily requires a dismissal for failure to state a cause of action." <u>Hardy v. N.Y.C. Health & Hosps. Corp.</u>, 164 F.3d at 794.

Although plaintiff does not address the County Defendants' notice of claim argument in his opposition to their motion, he argues in his opposition to the medical defendants' motion that

he timely filed a notice of claim.  Plaintiff attached to that opposition a nearly-illegible certified mail receipt indicating he sent a mailing to an unidentifiable White Plains address, and that such mailing was delivered on December 21, 2018.  (Doc. #48 at 3).  At this early stage, construing plaintiff's allegations as true, plaintiff plausibly alleges he filed a notice of claim.

      B.     <u>Supplemental Jurisdiction</u>

Defendants argue the Court should decline to exercise supplemental jurisdiction over any state-law claims that may be construed from plaintiff's TAC.

The Court agrees except as to any state-law claims relating to plaintiff's First Amendment retaliation claim against Capt. Thomalen.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).  "For purposes of [S]ection 1367(a), claims form part of the same case or controversy if they derive from a common nucleus of operative fact."  <u>Shahriar v. Smith & Wollensky Rest. Grp., Inc.</u>, 659 F.3d 234, 245 (2d Cir. 2011).

As noted above, plaintiff has alleged a plausible First Amendment retaliation claim against Capt. Thomalen.  Accordingly, to the extent plaintiff's TAC may be construed to allege any state-law claims arising from a common nucleus of operative fact as his retaliation claim against Capt. Thomalen, the Court may exercise supplemental jurisdiction over such claims.

However, plaintiff's retaliation claim against Capt. Thomalen is the only claim "in this action" 28 U.S.C. § 1367(a), surviving dismissal.  Accordingly, the Court may not exercise supplemental jurisdiction over any potential state-law claims that do not arise from a common nucleus of operative fact as the First Amendment retaliation claim against Capt. Thomalen.  And

because the allegations underlying this retaliation claim do not comprise any other defendant's conduct, the Court cannot exercise supplement jurisdiction over any state-law claims against the other defendants in this action.  See 28 U.S.C. § 1367(a).

## CONCLUSION

The medical defendants' motion to dismiss (Doc. #45) is GRANTED.

The County's motion to dismiss (Doc. #57) is GRANTED.

The County Defendants' motion to dismiss (Doc. #61) is GRANTED IN PART and DENIED IN PART.

The only remaining claims are: (i) plaintiff's First Amendment retaliation claim against Capt. Thomalen; and (ii) any state-law claims that may be construed from the TAC that arise from a common nucleus of operative fact as to the First Amendment retaliation claim against Capt. Thomalen.

The Clerk is instructed to terminate the motions (Docs. ##45, 57, 61) and terminate from this case the following defendants:  (i) Correct Care Solutions, LLC; (ii) New York Correct Care Solutions Medical Services, P.C.; (iii) Dr. Raul Ulloa; (iv) Dr. Alexis Gendell; (v) Westchester County; (vi) Assistant Warden Francis Delgrosso; (vii) Assistant Warden LaFonda Spaulding; (viii) Captain Christopher Roberts; (ix) Sergeant Hector Lopez; (x) Sergeant Michael Randazzo; and (xi) Correction Officer Harrington (sued herein as C.O. Herrington).

By February 17, 2020, defendant Capt. Thomalen shall file an answer to the TAC, to the extent that the TAC alleges a First Amendment retaliation claim and/or a related state-law claim against him.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: February 3, 2020
        White Plains, NY

                            SO ORDERED:

                            _____
                            Vincent L. Briccetti
                            United States District Judge